J. B. HENDRY v. ATLANTIC DREDGING & CONSTRUCTION CO.

191 So. 525
Special Division B
Opinion Filed October 20, 1939
Rehearing Denied November 8, 1939

*Mabry, Reaves, Carlton & White,* for Plaintiff in Error; *Marchant & Love, Bryant & Trantham* and *Harry H. Wells,* for Defendant in Error.

BUFORD, J.—Writ of error brings for review judgment in favor of defendant on overruling of demurrer to defendant's pleas.

The pleadings pertinent to be discussed here are the amended declaration, which averred, *inter alia:*

"That plaintiff had under lease a large tract of land consisting of several thousand acres, which lands lie along the Caloosahatchee River for several miles eastward from La-Belle, Florida, in Hendry and Glades Counties, Florida, said lands being commonly known as the Ford and Goodno tracts; that a large portion of said lands are bottom lands lying on both sides of said river, and the remainder thereof was of little value for pasturage; that said bottom lands were very fertile and produced immense growths of Bermuda grass and other grasses and natural growths, and afforded excellent and valuable pasturage for plaintiff's cattle; that at the time aforesaid plaintiff had on said tract of land aforesaid approximately 4,000 head of cattle, including approximately 1,400 or more beef cattle consisting chiefly of steers which were being fattened upon said pasturage for the market, and including approximately 2,600 or more stock cattle consisting of breeding cattle, calves and yearlings, approximately 1,800 thereof being breeding cattle; and the said lands under natural conditions furnished ample pasturage for said cattle.

"Plaintiff further avers that during the month of January, 1936, and thereafter, the defendant, under contract with the United States of America, was engaged in widening and

straightening the bed of said Caloosahatchee River between the LaBelle Bridge and a point designated in said river as old lock three; which is approximately *three to four* miles eastward from said bridge; that defendant at various times during the year 1936 built various dams across said Caloosahatchee River at various places between the two points aforesaid, and dug various by-passes for the purpose of directing the waters of said river around the immediate points where defendant was engaged in its operations aforesaid; that defendant likewise built a dam across Shell Creek and a dam across a drain running from an area known as Lake Flirt area to a point where said creek and drain emptied into said river, all of which was done by defendant for the purpose of enabling it to conduct its operations free from these waters.

"Plaintiff further avers that the said dams caused the waters of said river to back up and overflow the pasture lands of plaintiff aforesaid, and that the said by-passes were not sufficient in width or depth to carry off the waters of said river or to prevent the flooding of plaintiff's pasture lands aforesaid; that the dam across Shell Creek caused the said creek to back up on and overflow the plaintiff's pasture lands on the south side of said river, and the dam across the Lake Flirt drain prevented the waters of that area, in which a portion of plaintiff's pasture lands aforesaid lay, from draining; that said by-passes being inadequate as aforesaid, the said dams interfered with and prevented waters resulting from rainfall from flowing off of plaintiff's pasture lands as it ordinarily and naturally would.

"Plaintiff further avers that said dams and by-passes aforesaid were so spaced in time as to cause plaintiff's pasture lands aforesaid to be flooded and overflowed four or five times from and including January, 1936, to the end

of said year; that by reason of said acts of defendant, plaintiff's pasture lands aforesaid were caused to remain inundated for long periods of time during the year 1936, and by reason thereof the said grass crops thereon were kept killed back so that during said year same were of no value for pasturage purposes; that while defendant released the said water from time to time it would by the means aforesaid cause another overflow before a crop of grass could grow upon said lands."—and "additional" pleas relied upon by the defendant, being three in number, set up as matters of defense. The plaintiff in error has stated the matters alleged in the three "additional" pleas fairly as follows:

"In plea number 1 it was alleged that the lands flooded constituted part of Lake Flirt bottom, and were reclaimed under and through drainage works of the Everglades Drainage District of the State of Florida; and that the title thereto was vested by statute in the Trustees of the Internal Improvement Fund, under and through whom plaintiff claims; that the State reserved and retained the right to construct and maintain dikes, levees, locks or other artificial devices for regulating the level of said Lake Flirt, for the purpose of commerce, navigation, drainage or irrigation; that the flooding of the lands complained of resulted solely from the construction of a canal through said lands, which was done by the United States Government under contract with defendant for the purposes of navigation, drainage, and irrigation, and in the usual and customary manner; that prior to the commencement of said work the Trustees of the Internal Improvement Fund of the State of Florida transferred to the United States the right reserved to the State of Florida, as aforesaid, and the flooding complained of was occasioned by the exercise by the United States of the right so reserved."

334

"Plea number 2 avers that the title of the lands flooded was vested originally in the State of Florida in its sovereign capacity, and were reclaimèd through the means of drainage operations conducted by the State of Florida in the Everglades Drainage District; that the title of the State so held thereupon was transferred to the Trustees of the Internal Improvement Fund, under whom, through *mesne* conveyance, plaintiff claims; that under the statute, to-wit: Chapter 7861 of the Laws of Florida, Acts of 1919, it was provided that the State reserved the right at any time to enter upon such reclaimed lands and to make and construct such canals, dikes, and other works as might be necessary for the further drainage and reclamation thereof, and also the right to construct and maintain dikes, levees, locks or other artificial devices or means for regulating the level of Lake Okeechobee, Lake Hicpochee, or other lakes within the territory for the purpose of navigation, drainage or irrigation, and that each conveyance of reclaimed lands made by the said trustees should contain proper recital of said reservation, and that neither the State nor the trustees, nor those acting under them, or by contract by or through them, should be liable for any damage, injury or claim on account of the raising or lowering of the waters of any such lake for the purposes aforesaid, and that the trustees were authorized to reserve from sale such tracts as they deemed necessary for works of drainage or appurtenances thereof; that the flooding of the lands involved in this suit resulted solely from the construction of a canal through said lands, which was done for the purposes of navigation, drainage and irrigation, and according to the terms and provisions of a contract between defendant and the United States, and in a usual and customary manner; that prior to the commencement of the work and in contemplation thereof and of such flooding,

and prior to the acquisition of plaintiff's right to use said land, the right so reserved to the State of Florida was transferred to and conferred upon the United States."

"In plea number 3 it was averred by defendant that the work was being performed under contract of the United States, which was engaged in the project of digging a canal from Lake Okeechobee along the approximate course of the Caloosahatchee River to the Gulf of Mexico, a copy of the contract with the plans and specifications being attached to and made a part of the plea; that the plans and specifications provided for alternative types of work, namely, dredge of suction excavation, and dragline or digging excavation, describing the usual method of each such operation; that the usual and customary method of performing the dragline excavation (the method employed by defendant) was that where the canal ditch taps the banks of any stream or body of water the flow of such stream or body of water is dammed off from the ditch, which might cause temporary overflowing and flooding of the adjacent land; that as to certain lands the right to flood same was reserved to the State of Florida at the time of the transfer thereof to the Trustees of the Internal Improvement Fund of the State of Florida, under whom, through *mesne* conveyances, plaintiff claims; that as to the remainder of the lands (plaintiff's pasture lands) the United States Government had obtained from the owner, under whom plaintiff claims, a grant of the right to enter upon said lands and to deposit thereon earth, spoil or other material excavated in the construction of the waterway; and that in and by said grant the owner did fully release the United States of America, its officers, agents, servants, and contractors from liability for all damages done and caused to be done, and from any claim or demands whatsoever for injuries relative or absolute,

suffered by or done to said lands by reason of the construction of said waterway and the deposit of such spoil or other material, a copy of which grant and release was attached to and made a part thereof, and which appears at page 90 of the record; that defendant in bidding for the job, bid with reference to the usual and customary method of performing drag-line dredging, and that the contract was awarded to him in contemplation of performing same he would dam the said stream or streams and cause the waters thereof to overflow their banks and inundate the adjacent spoil area; that in doing said work defendant did construct certain dams and did cause overflows, but that all of said dams were constructed under the immediate supervision and direction of the engineers of the United States on the scene and in charge, and the overflows occasioned thereby were at all times kept within the limits of the spoil area; and that the plaintiff acquired his right to the lands subsequent to the execution of said grant and with knowledge thereof, and that his right to use the same for grazing was inferior and subject to the rights of this defendant to flood the same in the doing of the work called for by the contract."

The statute pleaded was Section 5 of Chapter 7861, Acts of 1919, Section 1570 C. G. L. It can serve no useful purpose to quote the section here. The contract between the United States Government and the defendant was attached to and made a part of the pleas and supports the allegations of the pleas in reference thereto. Plats and maps, showing the location of the work and the spoil areas, were attached to and made parts of the pleas.

The allegation that "as to the remainder of said lands the United States Government obtained from the owner of said land, under whom plaintiff claims, a grant of the right to enter upon said lands and to deposit thereon earth, spoil or

other material excavated in the construction of said water-
way; and in said grant the said owner did fully release the
United States of America, its officers, agents, servants and
contractors from liability for all damages done, and caused to
be done, and from any claim or demands whatsoever for in-
juries relative or absolute, suffered by or done to said lands
by reason of the construction of said waterway and the de-
posit of such spoil or other material" is supported by written
grant under seal executed by Henry Ford and Clara J.
Ford. The grant is short and is as follows:

"KNOW ALL MEN BY THESE PRESENTS THAT: WHEREAS,
in the river and harbor Act of Congress approved July 3,
1930, provision was made for the improvement of the
Caloosahatchee River and Lake Okeechobee Drainage Areas,
Florida, in accordance with the report submitted in Senate
Document No. 115, 71st Congress, second session, subject
to the condition, among others, that local interests shall,
without cost, to the United States, furnish suitable areas for
the deposit of dredged material in connection with the work
and its subsequent maintenance, and

"WHEREAS, the undersigned grantor is the true and lawful
owner of that certain tracts or parcels of land situated in
Hendry County, State of Florida, and more particularly
designated as follows:

"All of Section Two, Township 43 South, Range 29 East,
and all of Section Three, Township 43 South, Range 29
East, except Government Lots three and four in said Section
Three, and Government Lots one and two in Section Four,
Township 43 South, Range 29 East, and North one-quarter
of Section Ten, Township 43 South, Range 29 East, and
WHEREAS, the Grantor has the right and power to execute
this covenant and release; Now, THEREFORE, in considera-
tion of the benefits to accrue to the grantor in the added

convenience for the use of said waterway and the en-
hanced value that will result to the lands of the grantor as
the result of the construction and maintenance thereof, and
in order to facilitate the United States in the construction
of said waterway, the grantor hereby gives unto the United
States, its officers, agents, servants and contractors, the
right, privilege, power and authority to enter and to deposit
upon the aforesaid tract such earth, spoil and/or other
material excavated in the construction and/or maintenance
of the waterway hereinabove named, and the said grantor
hereby expressly and fully releases the United States of
America, its officers, agents, servants and contractors from
liability for any and all damages done or caused to be done,
and from any claim or demand whatsoever for injuries,
relative or absolute, suffered by or done to the lands and
premises hereinbefore described .by reason of the construc-
tion of said waterway and the deposit of such spoil or other
material. Provided, that the right, privilege, power and
authority hereinabove granted and the release hereinabove
described shall be in full force and effect in perpetuity from
and after the date hereinafter set forth."

The release was executed on April 17, 1935.

Admitting that the declaration in this case sufficiently
alleged a cause of action, the pleas sufficiently alleged valid
defenses to that cause of action and the demurrers for the
purpose of pleading admitted the facts as well pleaded in
the pleas.

The order of judgment entered by the court below is:

"This cause having come on before the court for hearing
upon demurrer filed by the plaintiff to the additional pleas
filed herein by the defendant and numbered 1, 2, and 3—all
previous pleas having been withdrawn at the request of
counsel, and the court having heard arguments of counsel,

and having reached the conclusion that the grant executed by Henry Ford referred to in the plea numbered 3 contemplates and, therefore, releases the damage claimed by the plaintiff in the declaration, and is a good defense thereto; and having further reached the conclusion that under the Florida statutes referred to in the additional pleas numbered 1 and 2, to-wit: Section 1570 C. G. L., 1927, there is no liability on the part of the defendant for the acts committed, as alleged in plaintiff's declaration; it is now, therefore, CONSIDERED, ORDERED AND ADJUDGED that said demurrer to said additional pleas severally be and it is hereby overruled and denied.

"Plaintiff having announced that he would stand upon his demurrer to the said additional pleas and suffer final judgment against him thereon, and it being the view of the court that defendant is entitled to a judgment in his favor upon demurrer to said pleas, it is now, therefore,

"CONSIDERED, ORDERED AND ADJUDGED that the plaintiff take nothing by his plaint, and that the defendant go hence without day; and that the defendant do have and recover of and from the plaintiff its costs incurred herein, and hereby taxed in the sum of $5, for which sum let execution issue."

Because of the factual conditions alleged in the pleas, none of the cases cited in support of plaintiff in error's contention appear to be in point. The pleas not only allege that the defendant performed the work incident to constructing the canal in the usual and customary manner of performing drag-line excavation, but it is further averred that such overflow as was caused by the construction was kept within the spoil area and it is averred that the right to overflow and inundate lands incident to the construction of reclamation canals and drains was reserved in the State of Florida and by it assigned to the United States Government and

340

that this defendant was acting under authority from the United States Government. It is further averred that the owner of the lands involved had released the United States Government and its contractors from all damage of whatsoever nature and kind which might accrue by reason of the performance of any contract or undertaking by the United States Government for the construction of drainage canals through the lands involved.

It is hard to conceive how a release might have been phrased to more adequately protect the Government and the Government's contractors from any damage which might accrue to the lands or the use thereof by reason of the performance of the contract to accomplish the drainage contemplated.

If we had a case where there was presented evidence pro and con on the issues tendered by the pleadings the cases cited might be found to be in point, but issue was not joined on the pleas.

The judgment should be, and is, affirmed.

So ordered.

WHITFIELD, P. J., and CHAPMAN, J., concur.

TERRELL, C. J., concurs in opinion and judgment.

Justices BROWN and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.